vs. Maria, Morilla, Maria. How about that? 24-10-610. We've got Ms. Dunker here for the appellant. And Mr. Mikulic? Mikulic. Mikulic. Mikulic. Got it. For the appellate. Very well. All right, Ms. Dunker, whenever you're ready. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. May Ann Dunker, Assistant Federal Public Defender, on behalf of the appellant, Carlos Morilla. Mr. Morilla has argued, and the government agrees, the District Court procedurally erred when it applied the sophisticated laundering enhancement. Because the government has conceded procedural error in this case, the only question for this Court to decide today is whether that error was harmless. The District Court's purported harmlessness finding was invalid in this case. This is so because the District Court announced that finding prior to considering the complete record of the 3553A factors or offering the defendant the opportunity to speak. Because the District Court procedurally erred and that error was not harmless, Mr. Morilla asked this Court to vacate his sentence and remand for resentencing without the application of the sophisticated laundering enhancement. Because the government has conceded procedural error, I'd like to focus my argument today on Issue 3, whether that error was harmless. As this Court knows, the Supreme Court has instructed that the guidelines are the starting point. They're the initial benchmark for all federal sentencing. A guideline error requires reversal unless that error is harmless, a narrow exception to the rule. And even the fact that a sentence is ultimately in the correct guideline range does not automatically render that error harmless. In this circuit, of course, this Court has established a framework to determine whether an error was in fact harmless. The first is, does this Court know, does it have confidence that the District Court would have imposed the same sentence? Can I ask you a question? Yes, Your Honor. I mean, you know we have the case law Keene. Yes, Your Honor. In this case, is the statement, the Keene statement that the District Court made sufficient in and of itself to insulate the trial court from a reversal? No, Your Honor. And I think there's a couple reasons for that. The first is the timing of the statement. The timing of the statement here was made after the District Court had ruled on the objections to the guideline enhancement, but prior to considering the argument of the government or of the defendant, before allowing the defendant the opportunity to address the court, and before even announcing what the guideline range was or what the sentence would be. And second, it's worth noting that we know that the guideline error in this case did affect the sentence. The District Court told us that at the end of the hearing. And I would reference the Court to the transcript, page 16, beginning at line 10. The District Court explicitly references the sophisticated means that we applied. And so in that statement, the District Court is referring to the error that it said it would put aside. And so I think that the statement at the end of the hearing affirms that the error was not harmless here. And also just examining the text of the statement itself, you know, while this would be a harder argument for us, I actually don't think the statement, even if it was made at the end of the hearing, would be sufficient. The District Court's Keene statement, which appears in the transcript, page 11, beginning at line 22, states that the District Court would, quote, impose a sentence independent of the guidelines as a reasonable sentence under post-Booker that would be equivalent to the sentence that I would impose under the guideline provision, end quote. And there, the District Court, as I read it, is not affirming a sentence under the 3553A factors. He seems to be saying the sentence that I'm about to impose that I have not yet announced is going to be reasonable. And of course, that's the inquiry for this Court. That's two of Keene for this Court to examine whether the sentence was reasonable. And so I think for those reasons, Judge Lagoa, because of the timing of the statement, because we know that the error did, in fact, affect the sentence because the District Court told us, and because the statement in and of itself I don't think would be sufficient under Keene. For those reasons, I don't think it saves it from being harmless. We filed a notice of supplemental authority in a 28-J letter that I think is helpful for this Court. As the Court knows, this Court has recently addressed the Keene issue in dicta in two cases, Green and Bindranath. And I think those are helpful here because what I'm asking the Court to do today is no different than what this Court has already said in dicta in those cases. First, in Bindranath, we have almost exactly the same scenario here, the same District Court judge. And we have a Keene statement that was made partway through ruling on guideline objections. He had ruled on one objection and then had several others to rule on. And in Bindranath, although this Court found no guideline error in that case, it stated, quote, a sentencing court cannot insulate itself from appellate review by declaring before hearing any argument on the factors and before providing the accused the opportunity to allocute that it would have imposed the same sentence anyway. If that were so, important procedural safeguards, federal sentencing hearings, the requirements of 3553A, and the right to allocution all might be rendered meaningless, end quote. And there's just really nothing different here. It's the same scenario. We have a statement that was made before giving the parties the opportunity to ask for a sentence, to explain why the 3553A factors support that sentence. And that goes for both sides. It's not just for the defense. It's also for the government is entitled to do that as well. And of course, we have the important right of the defendant to address the Court at the time of sentencing. Similarly, in Greene, again, the same district court judge at issue in this case and at issue in Bindranath. And in Greene, similarly, the district court had overruled one objection, had yet to rule on others, but had not announced the guideline range, had not given the defendant the opportunity to speak, had not offered the opportunity for the parties to ask for a sentence. And this Court stated that, quote, the timing of the district court statement thus rendered it categorically ineffective, end quote. And as I read Greene, it was largely because of the timing of the statement. And we have that here. And so again, what I'm asking this Court to do, it's really no different than what you've already said in those two cases in DICTA. The largest difference is that it really matters in this case. And it matters because there was a guideline error here. It was objected to. It was preserved. It was agreed upon by the parties. And it affects the sentence in this case. And so we are asking the Court to say what they've already said in those cases and to vacate the sentence and reverse for resentencing. And what this Court has said in DICTA, it, of course, has sound support in our sentencing case law as well. And in preparing for this case, I think it's helpful to go back to Gall, to go back to our seminal case on sentencing. And, you know, in that case, the Supreme Court did not just say the guidelines are the starting point. We should begin the hearing by calculating the guidelines. It also said that, quote, accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district court judge should then consider all of the 3553A factors to determine whether they support a sentence requested by a party, end quote. And that's at page 49 and 50 of the Gall opinion. And I think our sentencing case law and the Supreme Court instructs that what this is about is the district court has to consider what the parties have to say. That's for good reason. It ensures this Court, the reviewing Court, that any error was, in fact, harmless. And the only way for the Court to do that is to wait until the end of the hearing to ensure that it's considered a complete full record of the 3553A factors. We certainly don't advocate for a bright line rule that the district court can never consider the 3553A factors earlier in a proceeding. That doesn't work in practice. I think it's And, of course, we know that the guidelines are a 3553A factor. We discuss those. We consider those earlier in a sentencing hearing. But the only way to be sure that there is a complete record of those important factors to be assured that the district court, when it makes a keen finding, really has done so based on the sentencing factors and not just to prevent this Court from reviewing a sentence, the only way to assure that is by having the statement at the end of the hearing. And so, Your Honor, for those reasons, the error in this case, as has been conceded by the government, we would ask that the Court find that error to not be harmless, to vacate the sentence and remand to the district court for resentencing without the application of the sophisticated laundering enhancement. Thank you. Thank you, Your Honor. Sure. Good morning, and may it please the Court. I think what the defense counsel just said towards the end of her argument is what makes this case so unique and distinct from Greene or Bindernoth, Delgado, or any other case where this Court has said in the past that this kind of error, this kind of premature keen finding, would be reversible error. And I think what she said was that she recognized that the 3553A arguments, factors, could come into a sentencing hearing not just at the end but also at the beginning. And that's exactly what happened in this case. And that's exactly why the United States is defending the ruling in the sentence by Judge Moore below and arguing that because all the 3553A arguments either were made at the beginning of the sentencing hearing when the parties were making their sentencing objection arguments or were laid out in the PSI, which the district judge read as he noted during the sentencing hearing before the hearing, all of these arguments, all these 3553A arguments, were before the Court at the time that he made the keen finding shortly after addressing both the sophisticated laundering enhancement and minor role adjustment arguments. Isn't like there a virtue, though, in the formality of this kind of laundering statement, so to speak, coming at the end, the whitewashing statement coming at the end? I mean, this kind of wonderland, sentence first, verdict afterward, it's not only is it not a good look, but it's also what you're asking us to do is to, like, in every future case, to, like, scrounge around to figure out, well, whether in substance the thing that should have been done at the end was, in fact, done at the beginning, and maybe it's kind of buried there in the debate about the minor role adjustment, and maybe we can pour over the PSI, and that was technically before the judge. That just seems like kind of a recipe for disaster to me. It does, but Keene itself did not have a temporal requirement, and Keene is ultimately just a harmless inquiry, correct? It's really a mechanism where a district court judge can insulate their findings, saying, look, I've considered everything, and nothing is going to change my mind, so you, appellate court in Atlanta, you can just FYI, okay? But here, you know, this is a situation where after he makes a Keene statement, then he asks the defendant if he wants to, you know, if he wishes to make a statement, and so he's making this decision without having the defendant allocute, and then defense counsel says, there are several 3553A factors I'd like the court to consider, so again, he makes a statement without any consideration. I mean, and so really, it's a due process argument about why should not the district court at the end for finality, which is, I've considered everything, and I've listened to everything, and now I'm going to make my ruling. Right, Your Honor, and absolutely, the United States is cognizant, and we have heard this court's prior warnings and admonitions to the district court below that such a Keene finding should be done after the 3553A arguments, and it should be done after the right. 3553, it's very explicit, after allocution, after arguments by counsel, and consideration of the factors. It's basically, once everything has been said, and there's nothing more further to be considered, the ruling is going to be made, and I'm now telling you that nothing is going to change my mind. Right, but what makes this case so unique is that virtually all the 3553A factors the court knew at the time of the Keene finding, and as for the right of allocution, that right was waived by the defendant in this case, and that's what makes this case one. Yeah, right, after why would he allocute when the district court has said, like, nothing you could possibly say would change my mind? It's a fool's errand. The district court did not go so far as to say that nothing that you say will change my mind. I think that's infernal. But then that goes to the factor of why it's ridiculous, and I can't remember if it was Green or Bendenruth, where he then changes his mind after he makes a Keene statement, which is why you don't do the Keene statement before the sentencing hearing is over. And, of course, the way I'm going to distinguish Bendenruth is that, in this case, the court didn't change its mind, ultimately, with respect to one of the enhancements that it applied. Just another way to distinguish that. In good faith, Bendenruth. This is not a hill I would die on, I mean, honestly. Right, and we fully understand. We're staring at the precipice of reversible error. We understand, Your Honor. We concede that the sophisticated laundering enhancement should not have applied below. Actually, even the federal prosecutor below us, sentencing, argued it did actually actively argue that it should not have applied. And so we have to, you know, so we conceded on appeal. But I think for good, for best practices, I think this was said in the last oral argument in Bendernuth, of course, best practices Keene should be made at the end, after consideration. But also in that case was mentioned that sentencing is a holistic process. And I think if you look at the specific facts here, they're almost like one in a million. Because all the main arguments that the Defense Council made. One in a million, but this is the fifth one or sixth one. This is maybe two million case. But yes, Your Honor, we fully understand. But I think that the crux of the 3553A arguments made by defense below, were the same arguments they made for why the minor role should apply. Can I ask you a question? Yes, just and this, this is a little outside the record, I guess, but I'm just curious. So like, since the first time this court said, hey, we don't like this, we want this to come at the end. I assume trials have had trials occurred before this district judge since then. And what has happened? And is the United States saying, whoa, whoa, whoa, judge, let's do this at the end. The 11th Circuit has said it wants it at the end. United States, to be to be clear, for instance, in this case, I actually I don't know if in front of the district court below the United States has, has actively told the judge, I believe, actually, yes, one AUSA did actually from me speaking with them about this oral argument. But the district court keeps doing its keen finding premature. But in this case, I think what separates this case, ultimately, this is the main point, your honors, is prejudice, is I don't think the United States doesn't believe that in this case, there was sufficient prejudice for reversible error. Now, usually a keen finding made premature without all the same sentencing factors made at the beginning or at the end would be, but because these 3553A factors. The issue about the keen statement, again, is it's, it's really a judicial creation, okay? We've, we've, we've given the district court the ability to insulate its, its ruling because we're going to say, unless there's error, you know, we're not going to send it back because you've, in essence, told us that if you send it back, I'm still going to give the defendant the same sentence, okay? Because I've, I've considered everything and I've holistically looked at this and this is what my determination is. But I just don't understand why it's a judicial creation that we've, that we've invented. And if you don't do it procedurally correct, why would we not send it back? Right. And I think, again, it's just the particular facts of this case, where if you look at the, it's a short sentencing transcript, it's a short 3553A argument. Yes, but like one of the most important, and I understand that most of the time defendants don't allocute and don't make a statement, but it is a very important procedural due process requirement that they're entitled to. And they're entitled to tell the court whether they're remorseful, whether they want to say something to a victim, they're entitled to that. And to have a district court judge say, this is going to be my sentence and I don't really care what you're going to say. Would you like to now say something? I mean, it's outrageous. Understood, Your Honor. Understood. And if there's no more questioning on the keen finding issue, the United States would just respectfully add that while we concede error for the sophisticated laundering enhancement, we do not for the minor role adjustment that the district court below refused to apply. And the reason is that this defendant, Maria, laundered nearly half of all proceeds of this money laundering conspiracy, $550,000, which in and of itself is a great amount. And not only was it nearly half of all the proceeds that were laundered in this conspiracy, the defendant himself received a fee. And so he had a vested interest. He received $39,000 from making these three money transactions that amounted to money laundering. And so for all these reasons, Your Honors, we respectfully request that this court affirm the sentence of the court below. Thank you. Okay, very well. All right, Ms. Dunker, you've got five minutes. All right, we made Mr. Miklik earn his money. Let's make you earn your money on minor role. I'm happy to, Your Honor. So on the issue of minor role, we think at this point it would be appropriate for that to be sent back to the district court. The reason for that is the district court never made the relevant conduct findings for Mr. Maria for the scope of his joint criminal activity, for what was reasonably foreseeable. And as we know from the 11th Circuit case law, that is the first step of the minor role analysis, is to measure the defendant's role against the relevant conduct for which she has been held accountable at the time of sentencing. That inquiry was just never made. And so I think at this point it would be premature for this court to affirm the finding on minor role. We think that further development of the district court's finding about relevant conduct would be required as to minor role. Do you think that's so, so it sounds like you're not really pushing too hard on the relative, his relative culpability vis-a-vis his co-defendants, but only because I mean like what he, I mean $550,000, that's maybe a little bit less than Calero, but in larger increments and way more than Gomez, right? Well, it's, it's a factual inquiry, right? That's why we need the district court to make the factual findings about the scope of the conspiracy. I am pushing back on it because, and I believe I said this in the papers, the percentage that Mr. Maria received out of the laundering was much less than that of Calero. And he also was just not involved in the planning in the same way that I believe both Calero and Gomez were. Gomez suggested new ways of laundering the money to Diaz and I believe directly to the involved in the conspiracy for almost the full scope of it. Mr. Maria came in at the very end. He was involved in three transactions, the simplest form of laundering that I could think of, which was taking cash, depositing it in his own bank account and making a single buyer transfer. And so I, you know, I certainly take the point from the government and from the court that $550,000 in the scope of a, I believe a $1.3 million conspiracy, it's certainly not insignificant. I would be silly to stand up here and say that. But considering all of the facts as a whole, and particularly again, you know, that Mr. Maria joined at the end and if we sent it back to the district court to make findings about the scope of his agreement, the only conclusion would be that he came in at the end of the conspiracy and that therefore his agreement in the scope was very limited. And so I think for those reasons, it would just be premature at this point for this court to affirm the minor role finding. Now, as to the sophisticated laundering, we are not asking the court to send that back for any further findings. You know, this was argued in the district court as the government noted by both sides, myself and the AUSA. We both were really the same argument at the time. There was no factual dispute at all, no legal dispute. And the same thing here, the government and I agree as to the sophisticated laundering. And mainly why I think there's just no point in sending that back is Mr. Maria joined the conspiracy at the end. All of the actions of the co-conspirators that could arguably have been considered sophisticated happened prior to him joining the conspiracy. And we know, of course, from 1B1.3 that relevant conduct in a joint criminal activity does not include the acts of co-conspirators prior to a defendant joining the conspiracy, even if he knows of those actions, which is not the case here. And so for those reasons, our request of this court, and again, I want to make the point that this is not just about saying the right words at the right time. It's assurance for this court that the sentencing judge has performed his function, that he really has considered what the Supreme Court requires, what due process requires, and what this court requires. We mentioned that there's been several cases before this court. This is the case to reverse and to send it back. The district court did not have the benefit of the unpublished Green and Bindernoff decisions at the time that it made this finding. I was in court at probably the same time the government is referencing, to go back to your question, Judge Newsom, where an AUSA told the district judge or asked the district judge to make the finding at the end of the hearing, and he still didn't do so. And so I really think that the only way for this court to get the message across about what's required for a defendant's sentencing is to the district court, to remand for resentencing without the application of the sophisticated laundering enhancement. But I think further findings on minor role would be warranted here. Thank you. Very well. On the dot. Thank you both very much. Well argued on both sides.